**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

NO. 5:08-CR-00087-FL-1
NO. 5:11-CV-00439-FL

| | | |
|---|---|---|
| BRIAN LEE FOSTER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This cause comes before the Court upon petitioner Brian Lee Foster's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody ("motion to vacate") (DE-150).  Respondent government seeks to dismiss Foster's claims (DE-153), and Foster has responded (DE-167).  Because additional materials, including affidavits, were submitted in support of both sides, the undersigned informed the parties that the motion to dismiss would be converted to one for summary judgment.  (DE-169).  The undersigned allowed Foster an additional twenty-one days to respond to the converted motion for summary judgment, and Foster filed a supplemental response (DE-170).  In addition, the undersigned held an evidentiary hearing on August 21, 2012.  The motion to vacate and motion for summary judgment are therefore ripe for adjudication.  Pursuant to 28 U.S.C. § 636(b)(1), this matter is before the undersigned for the entry of a memorandum and recommendation.  For the following reasons, it is hereby RECOMMENDED that Foster's motion to vacate (DE-150) be DENIED and that the government's motion for summary judgment (DE-153) be GRANTED.

1

## I. **BACKGROUND**

On August 21, 2009, a federal jury found Foster guilty of conspiracy to distribute and possess with intent to distribute more than 500 grams but less than five kilograms of cocaine in violation of 21 U.S.C. § 846. (DE-96). The district court conducted a sentencing hearing on January 4, 2010 and sentenced Foster to 324 months' imprisonment. (DE-117, DE-124). Foster appealed the conviction and sentence. (DE-121). In an unpublished per curiam decision filed December 28, 2010, the United States Court of Appeals for the Fourth Circuit affirmed the judgment of the district court. *See* United States v. Foster, 406 Fed. Appx. 690 (4th Cir. 2010); DE-141.

On August 19, 2011, Foster filed the instant pro se motion to vacate under 28 U.S.C. § 2255, asserting that his sentence should be vacated and set aside on the grounds that he received ineffective assistance of counsel. (DE-150). On July 10, 2012, attorney John Keating Wiles entered a notice of appearance on behalf of Foster. (DE-173). The undersigned held an evidentiary hearing on August 21, 2012 to resolve the narrow issue of whether Foster's trial attorney, Jonathan Mark Herring, properly advised or informed Foster of the plea offer extended by the government. At the hearing, Foster testified that Herring never discussed a plea agreement with him at any point during his representation. Hr'g Mot. Vacate Aug 21, 2012 Tr. 3:12, DE-184. They spoke on the telephone four or five times, and Herring visited Foster at his residence in Atlanta in early August of 2009, shortly before his trial date. Tr. 3:24-25, 4:1-2. They met for approximately one and a half hours, but Herring never showed Foster a written plea agreement or discussed the subject with him. Tr. 4:9-14. According to Foster, the planned trial strategy was to discredit the confidential informant. Tr. 8:12-16. However, Herring never showed Foster any of the discovery in his case. Tr. 9:11-13. Instead, Herring had only a pad of

paper he used to take notes. *Id.* Going into trial, Foster believed he had a "great chance." Tr. 9:5.

In support of his position that Herring never communicated a plea offer to him, Foster filed an affidavit from his mother, Barbara Foster, who states that she was present for part of Herring's visit with Foster at his residence in Atlanta. Aff. Barbara Foster ¶ 4, DE-182. Herring did not review a written plea agreement with Foster during the one hour and forty-five minutes Mrs. Foster was in the same room with them, and Mrs. Foster never observed a box, a laptop computer, and she never heard an audio recording. *Id.*

On behalf of the government, attorney Jonathan Mark Herring testified that he discussed a plea offer with Foster on several occasions. The government extended its initial plea offer to Foster while he was represented by attorney Kelly Latham Greene. Herring was appointed to represent Foster in March of 2009, after Greene withdrew from the case. (DE-65, DE-66). When Herring was appointed, he spoke to Greene, who informed him that Foster wanted to go to trial and was not interested in the plea offer. Tr. 22:6-10. Greene also told Herring that his professional "relationship [with Foster] started going downhill" after Foster declined to accept the plea offer, which was why Greene withdrew from the case. Tr. 26:12-14. Herring recalled that he first discussed the subject of a plea offer with Foster during a telephone conversation on May 7, 2009. Tr. 13:1-6. At that time, Foster requested information about the plea offer and his potential sentence if he accepted the proposed offer. Tr. 13:1-6. In support of this testimony, the government offered into evidence a copy of Herring's time sheets for Foster's case. The four-hour time entry for May 7, 2009 states as follows:

> Review of file/organize; call to Fayetteville probation office; confirmed client's address; lengthy phone conference with client; research attempt issue; research firearm enhancement; review plea offer and sentencing notes per client's request to

3

discuss with him tomorrow

Ex. 1, DE-179. Herring spoke with Foster again the following day. He testified he clearly recalled the May 8, 2009 conversation because he was attending a continuing legal education class at the time and telephoned Foster from his car during a break. Tr. 15:15-19. During the lengthy conversation, Herring discussed the plea offer and explained the mandatory minimum sentence Foster faced. Tr. 15:20-23. Although he did not explain the plea agreement "line by line" to Foster, Herring "went over the basics," including the government's stipulations and possible sentences. Tr. 24:8-12. Foster did not indicate he wanted to accept the plea offer. Tr. 16:7. Herring's one-hour time sheet entry for May 8, 2009 is as follows:

> Review of notes for conference with client; lengthy phone conversation with client; review plea offer; discussed mandatory minimums; made clear he has to be in court 5/12 at 9 a.m. and that I would like him to come on Sunday so we could meet on Monday; he wanted me to speak with Atlanta attorney—told him I would be glad to—just have her call me

Ex. 1, DE-179.

On August 1, 2009, Herring traveled to Atlanta, Georgia, to meet with Foster at his home. Tr. 16:14-17. They met for approximately two hours on August 2, 2009. Herring brought "a big box—old-timey box briefcase full of the discovery which was in a three-ring binder, various audio recordings and [his] laptop computer." Tr. 16:20-22. They reviewed the discovery together at Foster's kitchen table, and Herring played some audio recordings for Foster. Tr. 16:22-24. They again discussed the plea offer and the possibility of obtaining a 5K motion for downward departure. Tr. 17:1-4. Foster indicated "that he was starting to think about taking the plea. He was second-guessing his decision to go to trial, but he wasn't sure." Tr. 17:11-14.

Because of Foster's indecision, Herring contacted the prosecutor, Assistant United States Attorney Eric Goulian, on August 6, 2009 about the plea offer. The government introduced into

4

evidence as Exhibit 2 a copy of the August 6, 2009 e-mail Herring sent to Goulian.   It reads, in pertinent part, as follows:

> Eric, hope you are doing well.   [I] wanted to check and see if there could still be an opportunity to work out a plea in this case.   [I] traveled to [A]tlanta this past weekend to meet with [B]rian and he mentioned that he is beginning to change his mind and thinks he may want to take the plea.
>
> [H]e did not confirm this for certain but [I] do believe he is starting to second guess going to trial.   [I]f he did wish to plea, would you be o.k. with him pleading under the last plea agreement you sent to [K]elly [Greene]?   [I] know we are coming close to trial and the door may be closed but [B]rian asked me to discuss this possibility with you.

Ex. 2, DE-179-2.   Goulian telephoned Herring later that day and confirmed that the plea offer remained valid except for the drug quantity stipulation, which was now "off the table."   Tr. 20:19. However, the plea offer retained an agreement "that the two-level firearm enhancement should not apply and that the government would recommend a three-level reduction for acceptance of responsibility."   Tr. 20:20-22.   When Herring telephoned Foster about the plea offer, however, Foster "said he did not want to take the plea."   Tr. 21:6.   Although Herring advised Foster that he did "not have a leg to stand on," Foster nonetheless "thought he had a good chance" and decided to go to trial.   Tr. 21:10-16.

In further support of its position, the government submitted an affidavit from Kelly Latham Greene, the attorney initially appointed to represent Foster.   According to the affidavit, Greene was appointed to represent Foster on or about April 3, 2008 and continued to represent him until he was allowed to withdraw as Foster's attorney on March 10, 2009.   Aff. Greene ¶ 2, DE-180. During his representation, Greene discussed the government's plea offer with Foster both in person and through written correspondence on several occasions.   *Id.* at ¶ 3.   Greene sent Foster copies of the plea agreement on May 5, 2008 and November 19, 2008.   Exs. A, B, DE-180-1, DE-180-2.   On December 9, 2008, Greene sent Foster a letter memorializing their discussions

regarding the government's proposed plea agreement and advising Foster to accept. Ex. C, DE-180-3. Greene informed Foster that he faced an active sentence of no less than twenty years if convicted. Based on his review of the evidence, Greene believed a jury would convict Foster of selling half a kilogram of cocaine "at the very least" and that Foster would not "benefit from a trial." Shortly thereafter, Foster asked Greene to withdraw from the case.

Based on the evidence of record, the government contends Foster's petition is without merit and seeks summary disposition. (DE-153).

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

### B. 28 U.S.C. § 2255

Under section 2255, Title 28 of the United States Code, a petitioner may obtain relief from his sentence if he can show that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). The burden

6

is on the petitioner to establish his claim to relief by a preponderance of the evidence. *See, e.g.*, <u>Miller v. United States</u>, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . ."); <u>Toribio-Ascencio v. United States</u>, Nos. 7:05-CR-00097-FL, 7:08-CV-211-FL, 2010 U.S. Dist. LEXIS 113549 at *5 (E.D.N.C. Oct. 25, 2010) ("In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence.").

## C.    <u>Ineffective Assistance of Counsel</u>

Foster asserts his counsel was constitutionally deficient.   To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-pronged test.   <u>Strickland v. Washington</u>, 466 U.S. 668, 686-87 (1984).   First, a petitioner must show that the representation he received fell below an objective standard of reasonableness.   *Id.* at 688.   This Court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight."   *Id.* at 689.   Therefore, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   *Id.*   To satisfy the second prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.* at 694.

The Supreme Court held in <u>Lafler v. Cooper</u>, 566 U.S. ___, 182 L. Ed. 2d 398 (2012), and <u>Missouri v. Frye</u>, 566 U.S. __,182 L. Ed. 2d 379 (2012), that a defendant's Sixth Amendment right to effective assistance of counsel applies during the plea negotiation process.   The Court reaffirmed that "claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*."   <u>Missouri</u>, 566 U.S. at __, 182 L. Ed. 2d at

7

387 (citing <u>Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985)).   Moreover, the Court held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."   *Id.* at __, 182 L. Ed. 2d at 390.   The Court in *Lafler* set forth the test for defendants seeking habeas relief on the grounds of ineffective assistance at the plea stage:

> [A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . . , that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

<u>Lafler</u>, 566 U.S. at __, 182 L. Ed. 2d at 407.

With these legal precepts in mind, the undersigned considers Foster's claims.

## III.  <u>ANALYSIS</u>

Foster asserts his trial and appellate counsel were ineffective for the following reasons: (1) failing to request a jury instruction based on a theory of a "buyers-sellers relationship"; (2)-(3) failing to seek the suppression of evidence based on an asserted *Miranda* violation; (4) failing to advise him of a plea agreement or negotiate a plea agreement with the government; (5) failing to notify him of the government's intent to seek an enhanced sentence; (6) failing to investigate or obtain discovery material during his appeal; and (7) failing to request that the district court not use the § 4B1.1 career offender provision at sentencing.   These grounds for relief are addressed in turn.

### A.  <u>Ground One: Failure to Request a Jury Instruction on "Buyers-Sellers" Theory</u>

Foster argues his trial counsel was ineffective for failing to pursue a defense theory based on a "buyer-seller" relationship between Foster and Aaron Richards, the person with whom the

government charged he conspired to posses and distribute cocaine. At trial, Richards testified that beginning in 2005, he began traveling regularly from North Carolina to Atlanta, Georgia in order to purchase cocaine from Foster. Trial Tr. 6-10, 17-18, 70-71, 86. (DE-120). Foster asserts that the evidence at trial showed that his relationship to Richards consisted of only "isolated sales between the two." Pet'r's Mem. Supp. Mot. Vacate 13, DE-150-1. He reasons that, had the jury been properly instructed on a "buyer-seller" theory of defense in relation to the conspiracy charge, he might have been acquitted. The undersigned finds no merit to this contention.

The government presented substantial evidence that Foster sold Richards significant quantities of cocaine over an extended period of time. This evidence supports the jury's verdict finding Foster guilty of conspiracy to possess with intent to distribute more than 500 grams of cocaine. *See, e.g.*, United States v. Mills, 995 F.2d 480, 485 n.1 (4th Cir. 1993) (holding that "evidence of a buy-sell transaction, when coupled with a substantial quantity of drugs, would support a reasonable inference that the parties were co-conspirators"); United States v. Daniels, No. 96-4641, 1997 U.S. App. LEXIS 23095, at *2-3 (4th Cir. 1997) (unpublished) (noting that while "standing alone, evidence of a buyer-seller relationship may not be sufficient evidence upon which to base a conspiracy conviction . . . evidence of a buyer-seller relationship is relevant to the question of whether a conspiratorial relationship exists" and that "evidence of continuing relationships and repeated transactions can support the finding that there was a conspiracy, especially when coupled with substantial quantities of drugs"). And while Foster asserts that Richard's testimony was inconsistent and therefore not credible, it is for the jury to resolve conflicts in the evidence and determine witness credibility. United States v. Ingram, 281 Fed. Appx. 173, 175-76 (4th Cir. 2008) (unpublished) (rejecting argument that testimony regarding alleged drug sales was inconsistent and therefore did not support the jury verdict finding the

defendant guilty of conspiracy to distribute cocaine).

In any event, the decision not to request a jury instruction on a "buyer-seller" relationship represents a strategic choice by defense counsel generally not subject to challenge. <u>Strickland</u>, 466 U.S. at 690-91 ("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Accordingly, the undersigned concludes Foster has failed to show he received ineffective assistance of counsel based on Ground One.

### B. <u>Grounds Two and Three: Failure to Suppress Evidence</u>

Foster's next two claims relate to his arrest and subsequent search of his home. Foster asserts that the officers with the Drug Enforcement Administration ("DEA") who carried out the warrant for his arrest failed to timely read him his *Miranda* rights and illegally searched his home. These constitutional violations should have led to suppression of the evidence seized at his residence, argues Foster, and his trial attorney's failure to seek suppression on these grounds constitutes ineffective assistance. The undersigned finds no merit to these contentions.

According to the report attached to Foster's petition, DEA agents arrested Foster pursuant to a federal arrest warrant on the morning of March 13, 2008, when he stepped outside his home. Ex. 2, DE-150-2. Agents then spoke with Foster's stepson at the door and conducted a protective sweep of the residence. No evidence was seized during the protective sweep. The DEA report indicates that agents then obtained oral and written consent from Foster to search his residence. The agents also read Foster his *Miranda* rights. Foster stated that he understood and was willing to talk to the agents. Upon searching the residence, agents found $4,303.00 in Foster's blue jeans in the master bedroom, a semi-automatic pistol, and several cell phones.

Foster contends that the initial protective sweep of his residence constituted an illegal search. The Fourth Circuit has held, however, that the police may conduct a protective sweep of a

residence when an arrest occurs just outside a residence. *See* <u>United States v. Jones</u>, 667 F.3d 477, 485 (4th Cir. 2012). Moreover, no evidence was seized during the protective sweep. The agents did not seize any evidence until after they obtained Foster's consent to search the home. Foster asserts, however, that this search was also illegal because the agents did not read him his *Miranda* rights before obtaining his consent to search the residence. *Miranda* warnings pertain to the voluntariness of statements by a defendant and are required when a subject is interrogated while in custody. <u>Miranda v. Arizona</u>, 384 U.S. 436, 478-79 (1966). Foster's novel theory that *Miranda* warnings are necessary before a valid search may occur notwithstanding, *Miranda* is unrelated to the law of search and seizure. As all of the evidence indicates that the agents conducted a valid search of the residence, a motion seeking to suppress evidence on this basis would have been frivolous. The undersigned therefore concludes that Foster fails to state a claim of ineffective assistance of counsel as to Grounds Two and Three.

### C. <u>Ground Four: Failure to Negotiate or Advise as to a Plea Agreement</u>

Foster asserts his trial counsel failed to pursue a plea agreement on his behalf and failed to advise him of any plea offered by the government. After hearing the testimony of the witnesses and observing their demeanor, the undersigned finds that Foster's claim lacks credibility. Weighing all the evidence, the undersigned finds that the version of events as the government presented them to be more plausible than that offered by Foster. At the hearing, Herring testified in detail regarding specific discussions he had with Foster regarding the plea offer first extended to Foster during Greene's representation. When Herring spoke with Foster on May 8, 2009, he advised Foster as to the stipulations contained in the plea offer and discussed with him the mandatory minimum sentence he faced. However, Foster was not interested in accepting the plea offer. Herring again discussed the plea offer with Foster on August 1, 2009 during their two-hour

meeting in Atlanta.    At that time, Foster expressed a certain degree of doubt about his decision to go to trial.    Herring therefore contacted the prosecutor, Goulian, on August 6, 2009 to ensure that the standing plea offer remained valid, given the pending trial date.    Goulian agreed to honor the original plea offer, minus the government's stipulation regarding drug quantity.    When Herring conveyed this information about the revised plea offer to Foster and encouraged him to accept the plea, Foster told Herring he wanted to go to trial.    Herring's contemporaneous time sheets and August 6, 2009 e-mail to Goulian strengthens his testimony.    This evidence fully supports Herring and strongly contradicts Foster.    The affidavit by Kelly Greene and the attachments thereto further undermine Foster's assertion that he never knew of any plea offer and never reviewed discovery in his case.

Herring's unequivocal testimony detailing his version of events is highly credible.    Herring was specific, direct and emphatic regarding his discussions with Foster about the plea offer.    In contrast, Foster's testimony was less detailed, not credible, and contradicted by the evidence introduced by the government.    For example, Foster testified that when he met with Herring in Atlanta for an hour and a half, they discussed trial strategy.    Specifically, Herring planned to discredit the confidential informant.    Yet according to Foster, Herring never reviewed any discovery with him.    This testimony is patently incredible.    Foster does not explain how he planned a specific trial strategy with his attorney without the use of any discovery.    Nor does he offer any plausible explanation as to why Herring's time sheets and August 6, 2009 e-mail to the prosecutor would contain detailed references to Foster's possible interest in a plea offer he asserts was never communicated to him.    Mrs. Foster's affidavit provides no support for Foster's claim. Indeed, Mrs. Foster contradicts Foster to the extent that he testified the Atlanta meeting lasted only one and a half hours.    Mrs. Foster avers that the Atlanta meeting was already underway when she

arrived, and that it lasted for approximately one hour and forty-five minutes after that. Mrs. Foster's affidavit regarding the length of the Atlanta meeting supports Herring's testimony and time sheets showing that the meeting actually lasted two hours. And while Mrs. Foster indicates that Herring did not review a written plea agreement with Foster during the meeting, she was by her own admission not present for the entire meeting. As such, the affidavit by Mrs. Foster does not support Foster's assertion that a plea offer was never communicated to him. Instead, the overwhelming evidence shows just the opposite: that both of Foster's attorneys, Greene and Herring, fully advised their client of the government's plea offer and encouraged him to accept it. But despite his attorneys' advice, Foster unrealistically believed he had a "great chance" and chose to go to trial. Evaluating the testimony and evidence in its entirety, the undersigned finds that attorney Herring fully advised Foster of the government's plea offer. Foster therefore fails to carry his burden of demonstrating ineffective assistance of counsel based on his attorney's failure to negotiate or inform him of a plea offer. Accordingly, the undersigned recommends that Foster's motion to vacate be denied as to Ground Four.

### D. **Ground Five: Failing to Notify of 21 U.S.C. § 851 Enhancement**

Next, Foster contends his attorney was ineffective by failing to inform him when the government filed notice of its intent to seek enhanced penalties at sentencing pursuant to 21 U.S.C. § 851 based on Foster's criminal history. The government filed its notice on August 17, 2009 (DE-90), two days before Foster's trial began. Foster contends that, had he known of his potential sentencing exposure, he would have sought to negotiate a plea offer instead of going forward to trial. However, at Foster's arraignment hearing, the government announced that it "intend[ed] to file a notice of enhancement based on the defendant's prior drug felony conviction prior to trial[.]" Arraignment Tr. 14:10-12. The government advised that the notice of enhancement would raise

the potential sentence to "not less than 20 years and not more than life imprisonment." *Id.* at 14:13-14. Further, attorney Herring testified that he fully advised Foster of the potential enhancement and resulting sentence Foster faced because of his prior criminal history. Hr'g Tr. 24:1-5; Decl. J. Mark Herring, DE-165. Attorney Greene also advised Foster in his December 9, 2008 letter that should Foster choose to go to trial, the government would seek an enhanced sentence and that Foster faced "an active sentence of no less than twenty years." Ex. C, DE-180-3.

Despite strong encouragement by Herring and Greene to accept the government's proffered plea agreement, Foster chose to go forward to trial. The undersigned has already found Herring's testimony credible and his version of events much more plausible than that described by Foster. The undersigned therefore finds that Foster was fully advised as to the potential sentence enhancement he faced as a career offender. Foster decided, however, to reject the government's plea offer and gamble on a jury verdict. The clarity of hindsight does not now allow Foster to blame his trial counsel for the informed choice he made to proceed to trial. The undersigned therefore recommends that Foster's ineffective assistance of counsel claim as to Ground Five be denied.

### E.  Ground Six: Failure By Appellate Counsel to Obtain Discovery

By his sixth argument, Foster contends his appellate counsel, attorney Sue Genrich Berry, failed to appropriately investigate his case and present meritorious issues on appeal. Foster bases this assertion on a letter Berry sent him responding to his request for the discovery materials in his case. In her letter dated January 26, 2011, Berry informed Foster that she did "not have a copy of the discovery materials or grand jury transcripts in [his] case" because "[t]hose types of documents are generally not provided to appellate counsel." Letter Sue Genrich Berry, DE-145-3,

14

DE-150-2.  Foster argues that Berry's failure to obtain the discovery materials in his case prevented her from effectively representing him on appeal.

In response, the government has submitted an affidavit from Berry, which states, in pertinent part, as follows:

1. I am an attorney licensed in North Carolina.  I have been practicing law for 32 years.  I am regularly appointed to represent federal criminal defendants in direct appeals to the Fourth Circuit Court of Appeals.  When I am appointed to handle a direct appeal, I review all of the pre-trial hearing transcripts, trial transcripts and filings in the district court.  Additionally, I attempt to speak with trial counsel to obtain any information about the course of the case which might be relevant on direct appeal;

2. As a general rule, I do not obtain the discovery materials provided to trial counsel at the district court level as materials outside the record will not be considered by the appellate court on direct appeal, and the time and effort would not be justified on direct appeal;

3. I was appointed to represent Mr. Foster in his direct appeal after his criminal conviction in the Eastern District of North Carolina in August, 2009.  As such, I am personally aware of the facts related to Mr. Foster's case on direct appeal, as I set forth below;

4. As is my usual practice, I reviewed the transcripts and filings in district court in Mr. Foster's case.  I prepared the joint appendix, identified three issues to be raised on appeal and filed the joint appendix and an appeal brief in the Fourth Circuit Court of Appeals;

5. The Fourth Circuit Court of Appeals does not consider an issue of ineffective assistance of counsel on direct appeal unless it is apparent from the record before that Court.  I did not identify any errors of trial counsel apparent from the record in Mr. Foster's case on direct appeal;

6. I do not raise or brief issues which are not arguably presented by the record on direct appeal and the law.  I followed my usual practice in Mr. Foster's direct appeal; and

7. At all times during my representation of Mr. Foster on direct appeal, I sought to maintain the high standards of appellate practice expected by the Fourth Circuit Court of Appeals.

Decl. Sue Genrich Berry, DE-166.

To establish ineffective assistance of appellate counsel, a petitioner must demonstrate deficiency and prejudice, as required by *Strickland*. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000). Appellate counsel is under no obligation to raise all non-frivolous issues on appeal. Smith v. Murray, 477 U.S. 527, 536 (1986) (stating that, "winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy") (internal quotation marks omitted). To the contrary, appellate counsel is charged with reviewing the record and "selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983). To overcome the presumption of effective assistance of appellate counsel, a petitioner must demonstrate that ignored issues were clearly stronger than those presented. Jarvis, 236 F.3d at 164.

In the instant case, Berry's letter to Foster on January 26, 2011 provides no support for his position that she failed to adequately investigate his case while preparing the direct appeal. As Berry explains in her declaration, appellate attorneys must generally confine their arguments to issues raised within the record. It is therefore unlikely that Berry's review of discovery materials outside the record would have assisted Foster's appeal. Berry identified and briefed three potentially meritorious issues on appeal regarding sufficiency of the indictment, venue, and sentence enhancement. The Fourth Circuit considered these issues and affirmed the district court. The Fourth Circuit's rejection of Foster's appeal does not, in and of itself, indicate ineffective assistance of appellate counsel. Foster does not identify any appellate issues that were "clearly stronger" than the ones presented by Berry. Jarvis, 236 F.3d at 164. To the extent Foster contends Berry should have raised a claim of ineffective assistance of trial counsel, the Fourth Circuit does not review these claims on direct appeal unless ineffective assistance is apparent from

16

the face of the record. <u>United States v. King</u>, 119 F.3d 290, 295 (4th Cir. 1997). In reviewing Foster's case, Berry detected no issue of ineffective assistance apparent from the face of the record and therefore properly declined to raise this claim on appeal. As Foster fails to identify any issue Berry clearly should have brought forward on appeal, his claim of ineffective assistance of appellate counsel lacks merit. Accordingly, the undersigned recommends that Foster's claim as to Ground Six be denied.

F. **Ground Seven: Failure to Object to Sentencing**

Finally, Foster argues his trial and appellate counsel were ineffective by failing to argue that the career offender provision under 4B1.1 of the Sentencing Guidelines is advisory only. However, the advisory nature of the guidelines is well known, <u>United States v. Booker</u>, 543 U.S. 220 (2005), and the record affirmatively demonstrates that the district court was aware of the advisory nature of the guidelines. Sentencing Tr. 7, DE-134; Presentence Investigation Report 7, DE-115; Arraignment Tr. 10:13-14. Argument by counsel regarding the advisory nature of the guidelines was therefore unnecessary. The record also shows that trial counsel in fact urged the district court to sentence Foster to the statutory minimum of 120 months, well below the guideline range of 324 to 405 months. Sentencing Tr. 11-12, 15. The district court ultimately sentenced Foster to 324 months, the bottom of the guideline range. There is nothing to indicate that, but for counsel's failure to inform the district court that the sentencing guidelines were advisory, Foster's resulting sentence would have been lower. As Foster demonstrates neither deficiency by counsel nor prejudice with regard to Ground Seven, the undersigned recommends that his motion to vacate be denied.

IV. **CONCLUSION**

Because Foster fails to show that his counsel's performance was objectively unreasonable

or demonstrate that prejudice resulted from his counsel's alleged errors, the undersigned finds that Foster has not sustained his claim of ineffective assistance of counsel. Thus, for the foregoing reasons, it is hereby RECOMMENDED that Foster's motion to vacate (DE-150) be DENIED and that the government's motion for summary judgment (DE-153) be GRANTED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Tuesday, September 04, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE